832

CHOUPIQUE ENTERPRISES et al *v.*
Charles LANSFORD et al

CA 80-64                                    601 S.W. 2d 237
Court of Appeals of Arkansas
Opinion delivered June 25, 1980
Released for publication July 8, 1980

*Arnold, Arnold, Lavender & Rochelle, Ltd.,* by: *E. Ben Franks*, for appellants.

*Williams & Kemp,* by: *Karlton H. Kemp,* for appellees.

MARIAN F. PENIX, Judge. Charles Lansford and Lenita Lansford, his wife, Lucy Fultz, James R. Shelton and Lois Shelton, his wife, Freddie Russell Shelton and Peggy Shelton, his wife, Earline Shelbourne, Harold Shelbourne, and Irene Shelbourne, his wife, Helen Shelbourne, William F. Sanders, Margaret Shelbourne, Lynne Shelbourne and Carolyn Shelbourne, his wife sued Choupique Enterprises, Inc., Edward J. Stine, Earnest Redfearn, Tommy Redfearn and Otha Moore. The suit, brought in Circuit Court, was for damages for trespass and wrongful removal of timber from a 15.03 acre tract which plaintiffs owned. The defendants counter-claimed and claimed to be the owners of the disputed 15.03 acre tract on the basis of adverse possession. The case was removed to Chancery to determine the defendant's claim of adverse possession. The Court granted Plaintiff's motion to bifurcate and reserved for jury trial in Circuit Court the question of damages and entitlement to double or triple damages if Chancery Court did not make those issues moot. The Chancery Court quieted title in the plaintiffs, appellees here. Defendant-appellant filed this appeal.

The tract in question is surrounded on three sides by land owned by Choupique, appellant. The south side or fourth boundary is Highway 82. The tract is wooded. Prior to 1978, the timber was last cut from it in 1952 or 1953. From 1953 to 1978, Plaintiffs-appellees have allowed the timber to grow on the land. Choupique built fences on the North and East sides of the tract in 1961, on the West side in 1964 or 1965. There were remains of a fence along Highway 82 but it had fallen into disuse. In June 1966, R. J. Stine, Vice-President of Choupique, talked to the company lawyer about the inconvenience of having the 15 acre tract not under the Choupique fence.

The Choupique fence on three sides of the tract would sometimes have gaps develop and Choupique's cattle would escape onto Highway 82. In 1966, at Stine's instigation, Choupique built a fence along the south line where an old fence lay. At the same time gaps were cut in the fencing on the other three sides in order for cattle to pass freely onto and across the tract. Stine testified Choupique made no claim to this land until 1973 or seven years after 1966. Stine testified

that in his judgment the building of the South fence in 1966 resulted in title vesting seven years later in Choupique by adverse possession. However, it was not until 1978 that Choupique made known its intention to claim adversely, by attempting to assess the land in its name and by its entering into a contract to cut timber. These overt acts by Choupique resulted in the plaintiffs filing the present lawsuit.

Choupique contends the fence, which was erected in 1966 and which remained in serviceable and usable condition, was a continuous, hostile, open and notorious act for the required statutory period of time.

The plaintiffs contend the possession by Choupique was begun in almost a surreptitious manner, with Stine's awareness the fence built with bois d'arc posts would soon be camoflaged by the thick underbrush and by the quick regrowth of weeds, vines, etc. Choupique did not use creosoted posts on the South fence as had been used in its other fencing but rather used the same bois d'arc posts as the old fence. This might lead a person to observe that although the South fence joined the Choupique fencing on the east and west that it actually was not a part of the Choupique enclosure but rather a re-building of the same fence which had been along the South line.

The Court found the fence along the southern boundary of the 15 acre tract was not openly discernible except for a very short period following its construction, and that knowledge of the 15 acre enclosure by Choupique would not likely be brought home to the several owners of the tract unless those owners were to examine the premises by foot. The Court found it doubtful that Choupique's possession was open and notorious prior to the 1978 timber cutting. The Court found that Choupique's claim of title by adverse possession should be denied and that title to the several tracts of land should be adjusted and found to remain in the several plaintiffs according to their record title and said tracts should be quieted in plaintiffs respectively free and clear of the adverse claim asserted by Choupique.

In *Terral* v. *Brooks*, 194 Ark. 311, 108 S.W. 2d 489 (1937),

the Court quoted from Corpus Juris Secundum, Adverse Possession, Volume 2, Section 45, page 559:

> Notorious possession contemplates possession that is so conspicuous that it is generally known and talked of by the public or the people in the neighborhood . . . The true owner must have knowledge or notice that possession is hostile; and that this may and must consist either of actual knoweldge or of constructive notice arising from the openness and notoriety of the possession.

The rebuilding of the South fence in 1966 was in an area described by witnesses as being heavily covered with dense underbrush. The same type posts and wire were in the fence prior to the rebuilding. All of the plaintiffs testified to not noticing any changes in the South fence in 1966 or thereafter. Henry Maddox, General Manager of Choupique from 1960 to 1965, testified the South fence is in the same position that it was prior to the work in 1966, and that the first he realized Choupique was claiming the fifteen acres was in 1979 when Stine talked to him. He further testified he had driven past the property at least once or twice a week since 1965 and had never seen any cattle on the property.

Stine knew the plaintiffs' names but did not mention to them Choupique was claiming the property. Plaintiff Lansford testified he spoke with Stine in 1974 telling him he had purchased the west one-third of the property, yet Stine said nothing to indicate Choupique was claiming the property. Plaintiff Shelton testified he met Stine in 1978 and told him he owned land on both sides of the highway, and Stine did not indicate Choupique was claiming the fifteen acres.

Choupique did not record any document indicating a claim or color of title, did not make any improvements on the tract, except for rebuilding the fence, did not cultivate nor farm the land, did not attempt to pay taxes until 1978 and did not remove any timber until 1978.

In examination by the Court, Choupique's Vice-President, Stine, testified to not claiming the land until more than seven years from the rebuilding of the fence. The occu-

pant must have the intention to claim ownership in addition to possession. The hostile character of possession depends upon the occupant's own views. See *Pinkert* v. *Polk*, 220 Ark. 232, 247 S.W. 2d 19 (1952) and *Terral*, supra.

Adverse possession requires (1) intent on the part of the occupant (2) open and notorious possession (3) continuous possession for seven years and (4) exclusive possession for seven years. Not all of these elements are present in this case.

Ten witnesses testified Choupique's cattle were never seen on the 15 acres before or after 1966.

In the 1954 case of *Dierks Lumber & Coal Company* v. *Carroll*, 223 Ark. 424, 266 S.W. 2d 294, the Court held the appellee who was claiming by adverse possession had not regularly nor continuously entered the land and the enclosure with the other lands belonging to him was not enough.

The plaintiff's use and enjoyment of the land was not interfered with by Choupique in any way until 1978. The plaintiffs testified to having gone on the land to dig small trees and violets. Choupique's possession was not exclusive of plaintiffs.

The Court correctly found Choupique has failed to meet its burden of proving ownership of the property by adverse possession.

Affirmed.